Good morning. Good morning. The Before you have Before you, you have the First District Sefkin Division of the Appellate Court which is Justice Terry Lavin, Justice Mary Ellen Kaglin, and myself, Justice James Fitzgerald Smith. The case before us today is Versace, MD, NSC, and Buma Sami, MD, SC 19-0339 I may have murdered the name, but whatever. The following order and procedures are as follows. First, the appellate will be given their opportunity with no interruptions for 10-12 minutes. Then the justices will ask their questions. After that, the appellee will present his case. Then the justices again have 10-12 minutes. Then the appellant will follow for 3-5 minutes. Please introduce yourselves now. Good morning, Your Honor. William Ziska on behalf of Mr. Bomiya Sami, the plaintiff appellant. I didn't murder it too bad. Not bad at all. Good morning. Chris Wunder for the appellee, Kevin Conway. Okay, you may begin. Your Honors, may it please the Court, I appreciate you facilitating this argument by Zoom call. It's one of my first, so excuse me if I'm not technically proficient. My first too, so. Okay, very good. I want to start on page five of the appellee's brief, actually, where it lists very conveniently the five counts that survived at the time of Mr. Cohn's first malpractice. The five counts that existed in the what's being called underlying case or I call it the hospital case because we have three separate cases here. In the hospital case, Bomiya Sami had still at the time of Mr. Cohn's first malpractice five counts surviving, one through five of his fourth amended complaint. The first was fraudulent inducement against the hospital and O'Hala, who was an agent of the hospital. The second was tortious interference and here the appellee takes a little liberty, a little sleight of hand. It's not tortious interference of at-will relationship. It's tortious interference with contract or at-will relationship. Count three is the tortious interference with perspective advantage and then four and five are aiding and abetting both the interference with contract or at-will relationship against Dr. Patras, who was an agent of EME and count five, aiding and abetting against Dr. Patras, again the EME's agent with perspective advantage. Now, as I think all of you know at this point, there are three cases here. It's a case within a case within a case. That creates a huge burden for Mr. Bomiassami in this case. We have to prove that we are entitled to go forward past the summary judgment motion of Mr. Conway in this case to go forward on material facts in question as to all three cases. First, the hospital case and that is where these five counts come in, where Mr. Bomiassami and his company, the person pursuing the hospital, Mr. Ohala, and Dr. Patras, Dr. Patras, under those five counts. And yes, we have to show that we had a viable claim there to go forward with the case here. Then we have to also prove that we had a viable case against Mr. Cone, the first lawyer who represented Dr. Bomiassami and his corporation. And Mr. Cone drafted the complaint that included these five counts against the hospital and Dr. Patras and Mr. Ohala. Mr. Cone failed to file a response brief against summary judgment in the hospital case. After that, when the case was disposed of for his failure, in our opinion, his failure to file any response, any opposition to that motion, he then took an appeal after a motion to reconsider. Taking an appeal on Mr. Bomiassami's behalf, he then failed to file a brief in the appellate court. Now the second case is against Mr. Cone, the first lawyer. Mr. Conway was hired to sue Mr. Cone on Mr. Bomiassami's behalf for malpractice for failing to file those briefs. Now, Mr. Conway missed the statute of limitations  the claim against Mr. Cone. So that's the second case that was disposed of. It was disposed of on a motion to dismiss by Mr. Cone based on a statute of limitations defense. The third case is this one against Mr. Conway for his failure to timely file the second case against Mr. Cone. Those are the three cases. Case within a case within a case. Now, there are no arguments here based upon the second and third cases, the viability of these cases. There are only arguments on the summary judgment motion in this case by which this case was disposed of in the circuit court. There were only arguments there dealing with the hospital case. And the argument is that only if the hospital case was viable could there be a case against Mr. Conway. True. But there was a case a viable case against the hospital in that initial hospital case. And there was a viable case for both fraudulent inducement against the hospital and Mr. O'Hala and for tortious interference. And therefore also for aiding and abetting against Dr. Patras for that tortious interference. And I'm going to start with tortious interference because that's really what this case was decided upon by the circuit court. The circuit court found that there was, even if there was interference, it was justified because it was interference with prospective advantage which requires that there be no justified interference. There has to be a lack of justification. And the court here found that there was justification which would vitiate the tortious interference with prospective advantage claim in the hospital case because of, quote, direct competition. And that's the crux of the case. Those two words in the circuit court's decision disposing of this case and bringing it before this court. Direct competition.  if there is direct bona fide competition that that is a justification to interfere with prospective advantage. Black letter law. But here, the facts are very clear. It's undisputed that there was no competition. Simply no competition. What was there? There was a thought in Dr. Bamiasami's head of possibly opening a, quote, medical lab. There was a rumor that Mr. Bamiasami had this thought, this contemplation of opening a lab. And that rumor apparently came to Mr. O'Hala's ears at the hospital. Mr. O'Hala challenged Dr. Sami on this rumor. And Dr. Sami Dr. Bamiasami, and I apologize, I know him as Dr. Sami, and it's a little easier if we call him Dr. Sami. Yeah, you can truncate it. That's just fine. Thank you. Dr. Sami admitted, yes, I'm thinking about opening a lab. And that's it. Those are all of the facts that support the circuit court's decision that there was direct competition justifying interference with prospective advantage. Was there competition? No. Now, what I'd like to point out is that disposing of a case on these facts, on a justification defense, justification for competition, essentially destroys the tort of prospective advantage, tortious interference with prospective advantage. Who has not, when employed, said, boy, I would love to start my own business? I did. As a lawyer at a big firm downtown, I always said, I would love to be in business for myself and have my own firm. Now I do. But I didn't back then. I didn't even have any beginning my own firm. I was not in competition then. If an employee of a store says to his boss or says to a co-worker, and his boss overhears or hears a rumor from that conversation that, boy, I love working at Best Buy, but I'd love to open a store someday. I'm thinking about maybe opening my own store. Now, that rumor alone would be sufficient for destroying any claim, future claim, of tortious interference with prospective advantage. That's not right. That's not the law. In Illinois, there has to be direct bona fide competition. And there is nothing, there is no case that the appellee has been able to cite to say that a mere contemplation or a rumor of a contemplated future possible contingent maybe competition is sufficient justification to interfere with prospective advantage. No case, no law, and no facts to fit the law as it does exist. No facts that show that there were or was direct competition. No facts that there was even any material step taken towards direct competition. The only, the only phrase that supports the justification here is contemplated. Dr. Sammy contemplated opening a medical lab. And unfortunately, that phrase comes from a complaint that Mr. Cohn himself drafted. Because the contemplation that Dr. Sammy had was not to actually compete with the hospital at all. But Mr. Cohn, again, in that case, committed malpractice. And that is not actually, alleged here. But the only reason that there is an admission that there would be a medical lab contemplated that would compete with the hospital is because of Mr. Cohn's allegation. Dr. Sammy never stated that in his deposition. He said that he was thinking about starting a lab. Just a lab. There are thousands of types of just as there are thousands of types of stores. And that Best Buy employee who says, I'd like to start a store, he may be thinking about starting a grocery store. There's no evidence that Dr. Sammy, there's no testimony that Dr. Sammy actually was going to or was even contemplating competing with a medical lab against the hospital. Now, there are also arguments dealing with fraudulent inducement. And the fraudulent inducement is quite a simple claim, actually, against Ohalda and the hospital, not against Dr. Patras. The fraudulent inducement was not just that when Dr. Sammy still had 16 months left of his contract with the hospital to supply ER physicians and to obtain a portion of each ER physician's income as the supplier of those physicians to the hospital, as well as his own income. 16 months left. He was induced to give up that last 16 months of his contract with the hospital to supply ER physicians, including himself. And how was he induced? Not just by saying, we'll treat you well, as the appellees would like you to believe. No, the record is very clear that it was not just the statement that we'll treat you well. It was the statement that the hospital will keep him, Dr. Sammy, on staff with privileges through the end of EME's contract with the hospital. EME was the new company that would come in to replace Dr. Sammy as the supplier of ER physicians at the hospital. And they said, let us move from you, from your company, to EME. Give up those last 16 months. Let's do it now. But as long as that three-year contract exists with EME, you will have a place here. We will keep you on staff. The best evidence on the record of fraudulent inducement here, that this was a fraudulent inducement, not just inducement, is the fact that the hospital, in the person of Mr. O'Hala, just months later, decided to get rid of Dr. Sammy based on a pretext that there was competition, even though there was not. Mr. O'Hala and the hospital wanted to get rid of Dr. Sammy. They wanted to get rid of his company, bring EME in, and then they wanted to get Dr. Sammy out. And that's the best evidence of it. That he really had, Mr. O'Hala, acting for the hospital, had no reason, no good business reason, no good medical reason, no good professional reason to get rid of Dr. Sammy. He was fraudulently induced. The cases that the appellee has cited and quoted to have nothing to do with the case here, except that they deal with blandishments, weak statements of intent to treat someone well, just the same as Mr. O'Hala said to Dr. Sammy, we'll treat you well. But they ignore, those cases ignore they do not have anything in common with the more concrete promise, the more concrete inducement that the hospital will keep him around, keep him on staff for the three years of that contract. Again, appellee cites no cases, no authority for a case where a person is promised employment as long as another contract exists. That is a very concrete period of time. In fact, it's defined in the ME contract with the hospital. It's three years. It's very clear. That's not just an offhand remark or a loose promise. That is a very concrete promise. And that is a contract. That is an oral contract. And that brings me to the last point that although we talk a lot about tortious interference with prospective advantage here, really we're talking about a contract here, an enforceable contract to keep Dr. Sammy for three years. And at the time those promises were made by hospital administrator Tom Whalen and Mr. O'Hala, they were acting in concert with EME. Everybody knew that Dr. Sammy was to be around for the full three-year period of that EME contract with the hospital, which really moves this into the realm of interference with contract. If this is an interference with contract as opposed to with prospective advantage, which is pleaded in the hospital case contract, interference with contract comes with no requirement that it be unjustified. It comes with no defense that competition can justify that interference. So for those, I think it's very simple. Those three arguments show that there was a very viable case under the five surviving counts in the hospital case at the time of Mr. Cohn's initial malpractice, failing to file the response brief in the circuit court. At that time, there was a very viable case, not only for tortious interference with prospective advantage and for fraudulent inducement, but also tortious interference with contract. Again, this case was disposed of in the circuit court based only on the argument of the appellee here, the defendant, Mr. Conway, that there was no viable case to lose by Mr. Cohn when he committed his malpractice in that hospital case. There was a viable case. And there is no question, there is no issue here that once that is established, nothing else is in dispute on this appeal. Whether Mr. Cohn's actions were actually a breach of his duty and whether Mr. Conway had a duty and breached it and caused damages in the second case against Mr. Cohn. As long as there was a viable case at the time Mr. Cohn committed initially his malpractice in the circuit court, then this case must be reversed. And I ask this honorable court to do so, reverse it back to the circuit court, allow us, allow Dr. Sammi and this company to show the facts that there was no, in fact, competition ever. And particularly at the time that Mr. Bambiassami was removed by Yemi and by the hospital. Okay, Bill. I have one point that bothers me deeply because you've built a bridge which is good, but your underlying major factor is missing. And that is justified reliance, the proof of that with this whole case is based on proximate cause of the initial event going back to the initial case. And your justified reliance on the oral and written contract nowhere in your discussion do you establish that he could rely on the oral part of the contract when in fact he only could rely on the written part and therefore your bridge falls down because you can't rely on the oral statement. Well, here... Thank you, Your Honor. It's a good question. But here in this setting the justified reliance was not attacked by the motion below in the circuit court. Now, on a motion in circuit court, it has to be shown that there are no material facts that could establish the claim. That's my point. The appellee failed to do that. The appellee has not even argued that. I'm not seeing though that you've established that you... what was established in the primary case. I'm not convinced you've over written anything to do with the oral and written contract. But again, here on a summary judgment in this case, this third case, this was not an issue that was raised by the defendant on the summary judgment that there was no justified reliance. Obviously, if the appellee had moved upon every claim, every element of every claim, we would have had to come back and support every element of every claim. But that wasn't an issue in the circuit court here. All right. Next. Questions? I just have one simple question. You used the word viable or viability maybe 50 times in your 15 minutes of remarks. What do you mean by viable or viability in the context of this case, within a case, within a case? I mean that but for Mr. Cohn's negligence, his malpractice, that the case would have gone forward perhaps to trial, perhaps to settlement, but Dr. Bomiassami and his company would have succeeded in their claims against the hospital, against Dr. Patras and Mr. O'Hara. So you have to prove that he would have won the underlying case and that the malpractice of Mr. Cohn also prevented him from being able to win that case and then Mr. Conway comes along and he adds to the despair of the plaintiff by also not preserving his rights to keep the possibility of having the underlying case, the thing that started it all, that he definitely would have won on that, would have prevailed. That's what you have to prove. That's the causation part, right? Yes, causation upon causation. And that was the basis of essentially of this trial court Judge Kubasiak's decision was that in his judgment you had failed on the issue of causation as it relates to the Mr. Conway lawsuit. Correct. On the basis that the tortious interference could not be established because of a justification of, quote, direct competition. Correct. Okay. Just to make sure we're on the same page. Okay. Thank you. That's all I have. Any other... In the initial motion for summary judgment, you're very critical and you have good cause, I think, about the judge not, or the lawyer not filing a response to the motion for summary judgment. Am I correct? Yes. But he did argue extensively. You don't deny that, do you? I don't. Thank you. Chris, you may proceed. Thank you. May it please the court. My name is Chris Wunder and I represent the appellee, Kevin Conway. The appellant has recognized, and I believe in the first sentence of his argument, that he has a huge burden in this case. This is a case where there is multiple layers of alleged malpractice at both the trial and the appellate court level. And both of these allegations are questions of law for the court. Despite the interesting circumstances as laid out by the appellants, the disposition of this case and this appeal is rather straightforward as any malpractice case, or even multi-layered malpractice case, as in this matter, rests on the strength of the underlying case via the case analysis. And I believe this goes to what the justices were indicating as far as the viability of the case. In the pending matter, the court should affirm the trial court's ruling on the motion for summary judgment based on the record before the court. Counsel in his discussion admitted that there were certain things that were not before the court and yet went into those items. Those are not supported by the record and the court should disregard those. The briefs have been provided and everything that's in those briefs is what matters at this point and the supporting record. The court already ruled on the appellee's two motions to strike various portions of the appellant's brief. So again, what's in front of the court are the briefs and the record, not the record as the appellant wishes it was. The case law cited in the appellee's brief is uniform and damning of all of the appellant's and evidence that they all fail as a matter of law. The court is already familiar with the facts and I do not want to simply rehash what's in the briefs. Everything is there for the court's review. I do, however, just want to point out a couple of things. In his argument, appellant's counsel indicates that the whole idea of starting a medical laboratory was due to Cohen's malpractice. This is untrue. And in fact, in the supporting record on page 205, which is page 59 of Dr. Sammy's deposition, he acknowledges that indeed it was going to be a medical laboratory. And in the verified complaint, Dr. Sammy admits under oath that it would be a competing medical laboratory. What I'd like to really focus on here is the important but still underdeveloped argument that the justices started to hone in on after appellant's argument. And it was not really presented to the trial court by the appellant whenever we filed the motion for summary judgment. And the argument goes to the heart of what really matters in this case and illustrates why the motion for summary judgment was properly granted. As the Seventh Circuit has indicated, summary judgment is the put-up or shut-up time in a lawsuit. So the crux of appellant's argument here, at this put-up or shut-up time in front of the trial court, is that Cone could have done something else to defend against the motion for summary judgment or somehow win the appeal on the motion for summary judgment ruling. So the appellants indicate that the court must consider what Cone could have done in the underlying case to beat the summary judgment motion or win the appeal. Appellants claim that this was an issue of fact that should have precluded summary judgment. But if you delve deeper into this alleged issue of fact, it is revealed that appellants' argument is incorrect. Appellants assert in their brief, and this is very important, that the trial court could not determine what opposition papers and affidavits Cone could have filed in early 2003 and whether they would have succeeded in defeating the defendant's motion. Simply put, it was appellants' burden to tell the trial court, and now this court, what these opposition papers and affidavits that Cone should have gotten in the underlying case, how they would have allowed the appellants to succeed and defend against the summary judgment motion or win the appeal. Appellants clearly have not met their burden, and in fact, they don't even really try. It is a could have, would have, should have sort of theory from the appellants and is a common reason why legal malpractice cases fail. Simply put, these sorts of cases fail because legal malpractice is not a re-IPSA cause of action. They must establish proximate cause, and this is something the appellants are not able to do. This matter illustrates the necessity that a plaintiff must actually produce evidence to establish what the attorney should have or could have done to salvage the client's case. Now, turning to what the appellants claim that Cone and Conway should have done and yet failed to do in this matter and the underlying case, what does the appellants use at this crucial moment to show that the trial court erred at this, as we've said, the put up or shut up moment? This paramount moment, nothing substantive, nothing useful to establish that a genuine issue of material fact did exist, only a vague concept of something more that Cone could have done to win the case. In fact, the appellants only try one thing. They point to an affidavit from Dr. Bomiassami that they claim that Cone should have submitted in opposition to the motion for summary judgment. This affidavit does not establish anything. Appellants claim in their brief that the omission of this affidavit was the principal act of negligence by Cone and in turn Conway, and this affidavit, which appears in C544-46 of the record, only goes to mitigation. It only establishes that Dr. Sami was able to find employment soon after his termination. It has nothing to do with the merits of any of the causes of action. Now, in contrast, if this matter had been resolved because the appellants could not show mitigation of damages, then the affidavit may have some bearing in this matter. But simply put, the affidavit does nothing to contradict the clear record before this court. So, the entire appellant's argument is reduced to that Cone should have done something, anything else, to avoid the motion for summary judgment. It's not an issue of fact unless the appellants can create one by actual evidence of what Cone failed to do. There is nothing in the record to establish something Cone could have done, nothing in the record to establish something that Cone should have done, simply nothing to evidence what this something was. Instead, again, appellants only point to their vague and speculative idea of something more without anything in the record to even flush out what that something more is. Appellants have clearly not met, as counsel indicated, their heavy burden to establish anything that would cause reversal of the motion for summary judgment. The only thing is plaintiff's speculation, albeit rather convenient speculation, and they cannot survive summary judgment based on their speculation. In contrast to appellant's vague speculation about what Cone could have done to stave off the motion for summary judgment, appellee's position is supported by the actual facts and record of the underlying case set forth in the brief and the record about appellants admittedly starting as they indicated in their verified pleadings and in the deposition testimony of Dr. Sammy, a competing medical lab. On summary judgment in this matter, appellants were not able to point to anything material that Cone should have done or could have done to save appellant's underlying case. They do not point to any material evidence that Cone failed to cite during oral argument on the motion for summary judgment. There is no proximate cause to show that the case-within-a-case element has been satisfied.  case was lost because it lacked merit for the reasons set forth in the brief. There was nothing that appellee or Cone could have done to make the claims have merit. As a result, appellant's arguments here are the same arguments that were unsuccessful before two trial courts when those courts both entered summary judgment against appellants. The claims failed twice before and they should fail here again. This court should affirm the trial court's entry of summary judgment in favor of the appellee. Thank you. Questions? None from me. None from me. Bill, you can proceed with your closing. Thank you, Your Honor. I'd like to point out that it is not a verified complaint. It is not verified by Dr. Sammy that this medical lab so-called that Mr. Cone said in the complaint was contemplated would actually compete with the hospital. It is a Fourth Amendment complaint that is not verified. I'd also like to point out that the summary judgment motion filed by Mr. Conway in this case attacks each of the claims but only on certain points. One, that there was an at-will contract. Two, that the so-called inducement, fraudulent inducement, was only based upon blandishments such as treating Dr. Sammy well. And third, that there was a competing laboratory. Those are the three issues that were actually argued on summary judgment here. The court found for the appellee, the defendant Mr. Conway, on the basis of one of them. And that is a finding of direct competition that would justify the interference with prospective advantage. That is nowhere found in the record. And therefore, I believe and I ask this court to reverse this case and send it back to Dr. Kabasiak to decide it upon the facts. Thank you. Any questions? None. None. Well, thank you very much. The briefs were very well done. It took a lot of time to really get through them. And your arguments were very well done. You addressed just about everything. I thank you for your time and we'll let you know the results within a couple of weeks. Again, thank you.